## STATE v. GUSTAVE COOK.

SUPREME COURT, AUSTIN TERM, 1882.

*Salary—Statute construed—Salary fixed in one statute by reference to another —Judge.*—The act creating a certain criminal district court provided that the judge should "receive the same salary as judges of the district courts," whose salaries were then fixed by an act concerning the latter courts, but were subsequently reduced by law. The judge of said criminal district court, though appointed subsequently to the said reduction of salaries of the judges of the district courts, brought an action against the State, under the statute authorizing him to so sue, to recover salary at the original and higher rate.

*Held,* That the plaintiff was entitled to salary at the reduced rate only.

*Same—Process—Service.*—In such action, though the statute authorizing it to be brought made no provision for service of process upon any one, yet service upon the Governor or Attorney-General was sufficient to bring the State into court.

Appeal from Travis—Opinion by Gould, C. J.—Under authority of an act authorizing him to institute suit against the State, to ascertain "what amount, if any, is due" him "by the State for salary as judge of the criminal district court of Galveston and Harris counties, between the first day of January, 1879, and the first day of September, 1880," this suit was brought by Gustave Cook, claiming that during that period he was entitled to a salary at the rate of $3500 per annum.

It appears that up to January, 1879, the appropriation acts provided for the payment of the salary of that official at the rate claimed by him. For the months of January and February, 1879, the appropriation was $500, or at the rate of $3000 per annum. (Acts of 1879, p. 19.) Thereafter the appropriation was only at the rate of $2500 per annum. Having received only the amount appropriated, this suit was brought to recover the balance claimed to be due. In accordance with the ruling just made in the case of the State v. Steele, if the salary of the judge of the criminal district court of Galveston and Harris counties was fixed by law at the rate of $3500 per annum, the right of that judge to his full salary was not defeated by the fact that the Legislature made appropriations insufficient in amount for its payment. Referring to the act of July 23, 1870, "To organize and define the powers of the criminal district court in and for the counties of Galveston and Harris, and to prescribe the duties thereof," we find it provided that "there shall be appointed by the Governor, by and with the advice and consent of

4B

the Senate, a judge of said court, who shall hold his office for four years, and until his successor is duly qualified, and shall receive the same salary as judges of the district courts." (2 P. D., arts. 6135, 6140.) At that time judges of the district courts were entitled to a salary of $3500, and it seems he claimed that the effect of this statute is the same as if its language had been "the judge of the criminal district court shall receive a salary of $3500 annually."

In our opinion, both the letter and the spirit of the statute require a different construction, the legislative intention, as expressed directly and as implied in the context, being to place this criminal district court and its officers, as far as practical, on terms of equality with other district courts and their officers, and to make the salary of the judge conform to, and dependent upon, the salary of judges of the district courts. The same act created the office of district attorney for that court, and prescribed that " the duties of said attorney shall be the same in said court as other district attorneys in the district courts, and he shall receive the same salary." (2 P. D., art. 6141.) It is significant of the legislative construction of the last clause of this article, that on the subsequent reduction of the salary of district attorneys from $1200 to $500, the appropriations for the salary of the criminal district attorney were at once reduced to the latter named sum.

So the act provided of this district attorney, and of the clerk of said court, that their "fees shall be the same as allowed by law to clerks and attorneys of the district courts." It would scarcely be claimed that the fees of these officers were fixed so as to remain unchanged, notwithstanding subsequent changes of the fees allowed clerks and district attorneys of the district courts.

In pursuance of the same prevailing purpose of placing the criminal district court on terms of equality with the district court, it was enacted in 1871, that: "It shall be lawful for the judge of said criminal district courts to exchange or alternate with any district judge * * in all criminal matters." (2 Pas. Dig., art. 6149.)

During the period from January 1, 1879, to September 1, 1880, Judge Cook was acting under an appointment made in 1878, and at the date of that appointment, and throughout that period, the salary of a district judge was $2500. No question arises in regard to the power to reduce his salary during his term of office. In our opinion the salary to which he was entitled after his reappointment was the same as the salary of the judges of the district courts, viz, $2500.

The point was made below and is presented here, that the act authorizing the suit made no provision for service, and that in the absence of some such provision, service on the Governor of the State was insufficient. The intention, no doubt, was that the court was authorized to treat this as good service. No statutory mode having been provided for bringing the State into court, it was competent for the court to recognize service on the chief executive officer of the State, or the Attorney-General, the legal representative of the State, as sufficient. (Wheeler v. State, 8 Texas, 230. See also authorities cited in brief of counsel for appellee.)

The judgment is reversed, and judgment will be here rendered in favor of the State.